IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

VANESSA J. DAVIS                                                                                    PLAINTIFF

V.                                            NO. 14-5056

CAROLYN W. COLVIN,
Acting Commissioner of the Social Security Administration                    DEFENDANT

**MEMORANDUM OPINION**

Plaintiff, Vanessa J. Davis, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for a period of disability and disability insurance benefits (DIB) under the provisions of Title II of the Social Security Act (Act). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. § 405(g).

**I.    Procedural Background:**

Plaintiff filed her current application for DIB on April 27, 2011, alleging an inability to work since September 9, 2009, due to anxiety, post left shoulder injury and repair, osteoarthritis, and depression. (Tr. 207, 212, 216). An administrative hearing was held on November 2, 2012, at which Plaintiff appeared with counsel, and she and her husband testified. (Tr. 28-80).

By written decision dated February 1, 2013, the ALJ found that during the relevant time period, Plaintiff had an impairment or combination of impairments that were severe - osteoarthritis/degenerative disc disease of the thoracolumbar spine, obesity, history of left distal radius fracture status post open reduction and internal fixation, history of left shoulder surgery, and hypertension. (Tr. 14). However, after reviewing all of the evidence presented, the ALJ

-1-

determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 16). The ALJ found that Plaintiff retained the residual functional capacity (RFC) to:

> perform light work as defined in 20 CFR 404.1567(b) except she can only occasionally climb ramps and stairs; she can never climb ladders, ropes, or scaffolds; she can only occasionally balance, stoop, kneel, crouch, and crawl; she can perform no overhead work or overhead reaching with the non-dominant left upper extremity; she can only occasionally reach in all other directions other than overhead, handle, and finger with the non-dominant left upper extremity; can perform no pushing or pulling with the non-dominant left upper extremity; she must avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation; and she must avoid concentrated exposure to hazards, including no driving as part of work.

(Tr. 17). With the help of the vocational expert (VE), the ALJ determined that during the relevant time period, Plaintiff would not have been able to perform her past relevant work, but that there were other jobs Plaintiff would have been able to perform, such as conveyor line bakery worker, furniture rental clerk, and lobby attendant. (Tr. 21-22).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which denied that request on December 20, 2013. (Tr. 1-5). Subsequently, Plaintiff filed this action. (Doc. 1). This case is before the undersigned pursuant to the consent of the parties. (Doc. 6). Both parties have filed appeal briefs, and the case is now ready for decision. (Docs. 11, 12).

The Court has reviewed the entire transcript. The complete set of facts and arguments are presented in the parties' briefs, and are requested here only to the extent necessary.

**II.    Applicable Law:**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnard, 292 F. 3d 576, 583 (8th Cir.

2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnard, 314 F. 3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F. 3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F. 3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§423(d)(3), 1382(3)(D). A Plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant had engaged in substantial gainful activity since filing her claim; (2) whether the claimant had a severe physical and/or

mental impairment or combination of impairments; (3) whether the impairment(s) met or equaled an impairment in the listings; (4) whether the impairment(s) prevented the claimant from doing past relevant work; and (5) whether the claimant was able to perform other work in the national economy given her age, education, and experience. See 20 C.F.R. §416.920. Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of her residual functional capacity. See McCoy v. Schweiker, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §416.920.

**III.    Discussion:**

In this case, Plaintiff amended her alleged onset date of disability to September 12, 2009, and she is insured through December 31, 2010. (Tr. 12). Accordingly, the issue in this case is whether Plaintiff was disabled during the relevant time period of September 12, 2009, through December 31, 2010.

In order for Plaintiff to qualify for DIB she must prove that, on or before the expiration of her insured status she was unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which is expected to last for at least twelve months or result in death. Basinger v. Heckler, 725 F.2d 1166, 1168 (8th Cir. 1984). Records and medical opinions from outside the insured period can only be used in "helping to elucidate a medical condition during the time for which benefits might be rewarded." Cox v. Barnhart, 471 F.3d 902, 907 (8th Cir. 2006)(holding that the parties must focus their attention on claimant's condition at the time she last met insured status requirements).

Plaintiff raises the following issues in this matter: 1) Whether the ALJ erred by failing to fully and fairly develop the record; 2) Whether the ALJ erred by omitting all consideration

of Plaintiff's severe Reflex Sympathetic Dystrophy; 3) Whether the ALJ erred in his RFC determination; and 4) Whether the ALJ erred in his reliance upon the hypotheticals and utilization of the VE's testimony which conflicted with the Dictionary of Occupational Titles (DOT). (Doc. 11).

### A.     Failure to Fully and Fairly Develop the Record:

Plaintiff argues that the ALJ erred in finding her alleged mental impairment was non-severe.  In his decision, the ALJ addressed Plaintiff's allegation that she suffered from depression. (Tr. 15).  The ALJ addressed the opinion of consultative examiner, Dr. Carl Magness, who diagnosed Plaintiff with situational depression on August 13, 2008, but also noted that Plaintiff reported she was doing great while taking Cymbalta when visiting Dr. Craig Cooper, D.O., on August 13, 2008. (Tr. 15).  The ALJ also reported that Plaintiff "dropped out of treatment" from Ozark Guidance Center. (Tr. 15).  Plaintiff takes issue with this conclusion.

As early as 2008, Plaintiff reported taking Lexapro, which she reported as not helping. (Tr. 286). Dr. Cooper changed her medication to Cymbalta in 2008, and on August 13, 2008, Plaintiff reported she was doing great on Cymbalta. (Tr. 287).  By February 11, 2009, Plaintiff reported to Dr. Cooper that she was doing well, and Dr. Cooper reported that "I think she has renewed her mental state" and was ready to lose more weight. (Tr. 291).  The records reflect that Plaintiff did not complain of depression, nor was she diagnosed with any type of mental impairment during the relevant time period.

Plaintiff was counseled at Ozark Guidance Center after the relevant time period,  on May 17, 2011, where she was diagnosed with mood disorder due to medical condition. (Tr. 501). She was given a GAF score of 59. (Tr. 501).  It was determined that Plaintiff would attend a pain

group therapy (Tr. 503, 506). On August 15, 2011, Jerry R. Henderson, Ph.D., determined there was insufficient evidence to rate a mental impairment during the relevant time frame (Tr. 473), and on November 29, 2011, Brad Williams, Ph.D., reported that the August 15, 2011 decision should be reaffirmed. (Tr. 492). On December 5, 2011, Stanley Rest, Ph.D., of Ozark Guidance Center, reported that Plaintiff had one individual therapy session where Plaintiff was offered a spot in the pain group, and that the therapist was unable to contact her when the group began. (Tr. 508). Plaintiff testified at the hearing that Ozark Guidance wanted her to go to a pain group, but that it was going to cost her $30 each time, so she could not afford it. (Tr. 58). She testified that she was "very depressed" and was taking nothing for it and had never been recommended anything. (Tr. 58). She further testified that she had not talked to Dr. Cooper about the depression and guessed that it was because of self pride. (Tr. 58).

The ALJ has a duty to fully and fairly develop the record. See Frankl v. Shalala, 47 F.3d 935, 938 (8th Cir. 1995); Freeman v. Apfel, 208 F.3d 687, 692 (8th Cir. 2000). This is particularly true when Plaintiff is not represented by counsel. Payton v. Shalala, 25 FG.3d 684, 686 (8th Cir. 1994). This can be done by re-contacting medical sources and by ordering additional consultative examinations, if necessary. See 20 C.F.R. § 404.1512. The ALJ's duty to fully and fairly develop the record is independent of Plaintiff's burden to press his case. Vossen v. Astrue, 612 F.3d 1011, 1016 (8th Cir. 2010). However, the ALJ is not required to function as Plaintiff's substitute counsel, but only to develop a reasonably complete record. See Shannon v. Chater, 54 F.3d 484, 488 (8th Cir. 1995)("reversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial"). "The regulations do not require the Secretary or the ALJ to order a consultative evaluation of every alleged impairment. They

simply grant the ALJ the authority to do so if the existing medical sources do not contain sufficient evidence to make a determination." Matthews v. Bowen, 879 F.2d 423, 424 (8th Cir. 1989). "There is no bright line rule indicating when the Commissioner has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis." Mans v. Colvin, No. 13-CV-2103, 2014 WL 3689797 at *4 (W.D. Ark., July 24, 2014)(quoting Battles v. Shalala, 36 F.3d 43, 45 (8th Cir. 1994).

The Court finds that the existing medical sources contained sufficient evidence for the ALJ to make a determination regarding Plaintiff's alleged mental impairment during the relevant time period, and therefore, the ALJ did not fail to fully and fairly develop the record regarding Plaintiff's mental impairment.

### B.    Severe Impairment:

Plaintiff argues that the ALJ erred by not finding that Plaintiff's reflex sympathetic dystrophy (RSD) was a severe impairment. An impairment is severe within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. 20 C.F.R. §§ 1520(a)(4)ii), 416.920(a)(4)(ii). An impairment or combination of impairments is not severe when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. 20 C.F.R. § § 404.1521, 416.921. The Supreme Court has adopted a "de minimis standard" with regard to the severity standard. Hudson v. Bowen, 870 F.2d 1392, 1395 (8th Cri. 1989).

Plaintiff refers to Dr. Magness's RSD diagnosis, dated August 13, 2008, in support of her position. However, Plaintiff can not cite to any evidence that she was diagnosed with or

treated for such a condition during the relevant time period or after the relevant period in 2011 and 2012.    Accordingly, the Court finds that Plaintiff's diagnosis of RSD had no more than a minimal effect on Plaintiff's ability to work.

### C.      **Credibility Analysis:**

In his decision, the ALJ found it reasonable that Plaintiff's medically determinable impairments could cause the alleged symptoms. (Tr. 18). However, he also found that Plaintiff's statements concerning the intensity, persistence and limiting effects of the symptoms were not entirely credible. (Tr. 18).  The ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of her pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of her medication; and (5) functional restrictions.  See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984).  While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. Id.  As the Eighth Circuit has observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003).

The ALJ discussed the medical records of Dr. Magness, Dr. Rodney Routsong, and Dr. Cooper, and also discussed the effect of Plaintiff's obesity. (Tr. 19-20). The ALJ concluded that Plaintiff's subjective allegations were out of proportion to the objective medical evidence. He pointed to instances where Plaintiff reported her Gabapentin medication helped her in the past, but she did not refill it; where Plaintiff missed appointments on January 17, 2011 and April 8,

2011 with Dr. Cooper; and the fact that Plaintiff's hypertension was "benign" and there was no evidence that Plaintiff's hypertension caused any end-organ damage. (Tr. 20).

Based upon the foregoing, as well as for those reasons given in Defendant's well-stated brief, the Court finds there is substantial evidence to support the ALJ's credibility findings.

**C.   RFC Determination:**

Plaintiff argues that the ALJ's RFC did not accurately reflect her impairments that were noted by Dr. Magness.  RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1).  It is assessed using all relevant evidence in the record. Id.  This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations.  Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004).  Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3).  The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace. Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003).  "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC." Id.

In his decision, the ALJ determined that Plaintiff was capable of performing light work with several limitations. (Tr. 17). In making this determination, the ALJ considered Plaintiff's testimony, Plaintiff's husband's testimony, the medical records, Plaintiff's obesity, and also noted that the record did not contain a substantial amount of medical evidence during the

relevant time period. (Tr. 17-20). The ALJ gave great weight to the State agency physicians' opinions, except found that Plaintiff was more restricted in her physical capabilities than the State agency physicians opined. (Tr. 20). The ALJ gave no considerable weight to the opinion of Dr. Magness, because he found it to be in sharp contrast with the evidence as a whole. (Tr. 20). The ALJ gave little weight to the opinion of Dr. Routsong, finding that it was internally inconsistent and noting that Dr. Routsong only saw Plaintiff one time, when he filled out the Physical RFC Questionnaire for Plaintiff. (Tr. 21).

The Court believes the ALJ incorporated a large part of Dr. Magness's opinion in his RFC, but discounted his opinion that Plaintiff was unable to use her left upper extremity at all, and that based upon the record as a whole, this was appropriate. Based upon the foregoing, as well as for those detailed reasons given in Defendant's well-stated brief, the Court finds there is substantial evidence to support the ALJ's RFC determination**.**

### D.     Hypothetical Question and VE Testimony:

The ALJ posed the following hypothetical questions to the VE:

> Q: Okay. So we assume a hypothetical individual same age, education and past work as Ms. Davis. We assume the individual is limited to light work as defined by the Social Security regulations. Assume the individual can only occasionally climb ramps, stairs, and never climb ladders, ropes or scaffolds, and only occasionally balance, stoop, kneel, crouch and crawl. Assume the individual can perform no overhead work or overhead reaching with the non-dominant left upper extremity, and the individual can perform no pushing or pulling with the non-dominant left upper extremity. Assume the individual can only occasionally reach in all other directions other than overhead – no, strike that. Let's leave that off. Let's leave off the reaching. Se we have no overhead work, no overhead reaching, same postural, no pushing or pulling. Assume the individual can only – or must avoid concentrated exposure to fumes, odors, dust, gases, poor ventilation, and hazards including no driving. Now based with that RFC, do you think the individual could perform any of Ms. Davis's past work?

> A: No, you honor.
>
> Q: Would you be able to identify any light level jobs that would accommodate those limits?
>
> A: Yes, your honor. There are jobs that meet the hypothetical. An example would be a conveyer line bakery worker. ... Also, your honor, there would be a furniture rental clerk. This is a counter clerk. ... Also, your honor, there would be an usher, or lobby attendant. ...
>
> Q: Now, if I add the additional limitation that the individual is able to only occasionally reach in all other directions other than overhead – so only occasionally reach in all other directions other than overhead, handle and finger with the non-dominant left upper extremity. What impact would that have on those light level jobs you've identified?
>
> A: On all three of those it would have no impact, your honor. They all are – the three that I mentioned require occasional reaching, handling and fingering an all three. ...
>
> Q: Okay. Now referring back to the first hypothetical, if I reduce it to the sedentary level would you be able to identify sedentary level jobs that accommodate those limits?
>
> A: Your honor, there would be a credit card callout operator. ...
>
> Q: Anything else that is available?
>
> A: Your honor, the only other one would probably be the surveillance systems monitor....That would not require occasional reaching – it would require occasional reaching, handling and fingering or less. ...
>
> Q: And so those two jobs you identified at the sedentary level require only occasional – they would accommodate only occasional reaching in all directions, only occasional handling and fingering with the non-dominant left upper extremity?
>
> A: That's correct, your honor, occasional or less.

(Tr. 73-76). At the conclusion of the VE's testimony, the ALJ asked him if his testimony was consistent with the information found in the DOT, to which the VE responded, "Yes, your honor." (Tr. 77).

-11-

Plaintiff argues that the ALJ relied upon VE testimony that conflicted with the job descriptions in the DOT because the ALJ's RFC limited Plaintiff to no overhead work or overhead reaching with the non-dominant left upper extremity, and the DOT descriptions for the three jobs identified required occasional reaching. When an apparent conflict between the DOT and VE testimony exists, an ALJ has an affirmative responsibility to address the conflict. Young v. Apfel, 221 F.3d 1065, 1070 (8th Cir. 2000). If evidence from the VE appears to conflict with the DOT, the ALJ must obtain "an explanation for any such conflict." Renfrow v. Astrue, 496 F.3d 918, 921 (8th Cir. 2007). An ALJ is not absolved of a duty to investigate any conflict simply because a VE responded "yes" when asked if his testimony was consistent with the DOT. Kemp v. Colvin, 743 F.3d 630, 632-633 (8th Cir. 2014).

The Court does not believe this case presents a conflict between the VE's testimony and the DOT. The ALJ presented a complete hypothetical to the VE, which included limitations of no overhead work or overhead reaching with the non-dominant left upper extremity. In response to said hypothetical, the VE cited three jobs Plaintiff could perform, which all require occasional reaching. However, it is noteworthy that Plaintiff had no specific manipulative restrictions on her dominant right upper extremity, and she was able to occasionally reach in all other directions other than other than overhead, handle, and finger with the non-dominant left upper extremity. Therefore, the Court does not believe a conflict exists. See Renfrow, 496 F.3d at 921 (holding that frequent reaching and handling requirements are not equivalent to repetitive use of the right hand and that no conflict appeared to exist).

Based upon the foregoing, as well as for those reasons given in Defendant's well-stated brief, the Court finds there is substantial evidence to support the ALJ's finding that there were

jobs Plaintiff could perform during the relevant time period.

**IV.   Conclusion:**

Accordingly, having carefully reviewed the record, the Court finds substantial evidence supporting the ALJ's decision denying the Plaintiff benefits, and thus the decision is hereby affirmed. The Plaintiff's Complaint should be, and is hereby, dismissed with prejudice.

IT IS SO ORDERED this 7th day of May, 2015.

*/s/ Erin L. Setser*
HONORABLE ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)